IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TONI WILLIAMS-GREEN<br><br>    Plaintiff,<br><br>v.<br><br>ELANTAS PDG, INC.<br><br>    Defendant.<br><br>Serve:<br>Registered Agent:<br>CT CORPORATION SYSTEM<br>120 South Central Avenue<br>Clayton, MO   63105 | Case No. 4:18-cv-1958<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW Plaintiff Toni Williams-Green and for her Complaint of employment discrimination on the basis of her race and age, and of retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), as amended, states as follows:

### PARTIES

1. Plaintiff Toni Williams-Green is a resident of the State of Missouri.

2. Plaintiff is an African-American female born in 1954.

3. Defendant Elantas PDG, Inc. (hereinafter "Elantas") is a foreign corporation which, at all relevant times was doing business in the State of Missouri. Elantas, which is an electrical insulation company, supplies specialty polymers for electrical industries.

4. At all relevant times, Elantas employed more than 15 employees for at least 20 workweeks per year at the facility at which Plaintiff worked.

1

5. From March 5, 2007 through August 2016, Elantas employed Plaintiff in St. Louis, Missouri.

## JURISDICTION AND VENUE

6. Jurisdiction of this Court is founded upon 28 U.S.C. §1331.

7. Venue is proper under 28 U.S.C. §1391(b) because Plaintiff was employed by the Defendant in the Eastern District of Missouri at all relevant times.

8. Plaintiff has satisfied the administrative prerequisites to suit under Title VII. On or about August 21, 2013, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC). On August 28, 2018, the EEOC issued to Plaintiff a Notice of Right to Sue, and this lawsuit is filed within ninety days of its issuance.

## ALLEGATIONS

9. Plaintiff first worked for Elantas as a temporary contract employee from 2005 to 2007.

10. Elantas hired Plaintiff as a Raw Materials Analyst around March 5, 2007 in the Quality Control department.

11. After a few years, Plaintiff moved to a Quality Control Analyst position in the same department.

12. Plaintiff was highly qualified for her work at Elantas. She earned a Bachelor of Science from Jarvis Christian College in 1981, with a biology major and chemistry minor. Throughout her career, prior to coming to work at Elantas, Plaintiff worked in laboratories, and in positions previous to her employment at Elantas, Plaintiff supervised employees.

13. As a Quality Control Analyst, Plaintiff's job duties included: evaluating finished products, evaluating customer tank samples, evaluating raw materials for use in production, maintaining records of results and status on all finished products, identifying and maintaining

documentation for suspect or known product discrepancies, calibrating test equipment, maintaining lab established 5-S practices, and interfacing with production and company laboratories on batch-status.

14. Throughout her employment with Elantas, Plaintiff received consistent yearly raises and positive performance evaluations.

15. On December 20, 2012, Plaintiff received an email from Alvin "Jay" Jones, Human Resources, regarding an open position in the Customer Service Relations department for a Customer Service Relations Manager (hereinafter "CSR Manager").

16. Mr. Jones is a white man.

17. The next day, Plaintiff told Mr. Jones via email that she wanted to apply for the CSR Manager position.

18. Pursuant to Mr. Jones's instructions, Plaintiff emailed Mr. Jones her resume and applied for the position.

19. Plaintiff's first interview for the CSR Manager position was with four white men: Jim McMillin, who was Defendant's Vice President and Chief Financial Officer, Mel Duhon, who was Defendant's Business Development Manager, Emerging Technologies, Kevin Forys, who was Defendant's Manager of Production Control, and Mr. Jones.

20. After her first interview, Mr. McMillin told Plaintiff that he was happy that she applied for the CSR Manager position and he hadn't known about her degree and depth of experience.

21. Similarly, Mr. Duhon told Plaintiff that he had been glad to learn more about her and thought she did a good job in her interview.

22. On January 10, 2013, Mr. Jones asked Plaintiff to complete an online assessment for the CSR Manager position. Plaintiff completed the assessment which she understood would be reviewed by a third-party.

23. On January 14, 2013, Mr. Jones emailed Plaintiff that, in addition to the online assessment, he would administer critical thinking appraisal tests for the CSR Manager applicants.

24. When Mr. Jones conducted the critical thinking tests with Plaintiff, he told her that if she didn't score well on the tests, she wouldn't have another interview.

25. Because Mr. Jones told Plaintiff that she had advanced to the second interview for the CSR Manager position, Plaintiff believed that she had scored well on the critical thinking tests.

26. Dana Roschnafsky, the previous CSR Manager, conducted Plaintiff's second interview for the CSR Manager position. The position was open because of Ms. Roschnafsky's recent promotion.

27. Before she became CSR Manager, Ms. Roschnafsky worked in the Quality Control Department (Plaintiff's department at the time of her interviews). Ms. Roschnafsky believed that her previous work in quality control developed a unique blend of skills that allowed her to understand the needs of the customer in her Customer Relations position.

28. Ms. Roschnafsky is a white woman.

29. On February 28, 2013, Mr. Jones sent a memorandum via email to all Elantas employees, which stated Elantas was promoting Diana LaRose to the CSR Manager position.

30. Plaintiff was better qualified for the CSR Manager position than Ms. LaRose.

31. At the time that she applied for the CSR Manager position, Ms. LaRose worked at Elantas as an Executive Administrative Assistant, and performed duties that were primarily secretarial.

32. Ms. LaRose is a white woman who is more than ten years younger than Plaintiff.

33. Ms. LaRose's qualifications were inferior to those of Plaintiff. Ms. LaRose does not have even a bachelor's degree, she had worked at Elantas for only three years, and she did not understand the technical aspects of Elantas' products.

34. Throughout the hiring process, Elantas treated Ms. LaRose more favorably than Plaintiff.

35. For example, prior to posting the position for application, Elantas permitted Ms. LaRose to learn the work of the position. Elantas did not extend the same opportunity to Plaintiff.

36. Elantas did not perform the same assessments on Ms. LaRose that it required of Plaintiff during the application process for the CSR Manager position.

37. On February 28, 2013, the same day that Mr. Jones announced Ms. LaRose's promotion, Plaintiff emailed Mr. Jones that she was disappointed in the hiring process. Mr. Jones asked, via email, what was wrong with the process. Plaintiff went to Mr. Jones' office and told him that it was unfair that Elantas awarded the position to Ms. LaRose instead of her, and that she believed Elantas had failed to promote her because of her race and age.

38. On June 7, 2013, Elantas placed Plaintiff on a performance improvement plan (PIP). Cindy Davey, Plaintiff's supervisor, and Allan Crossan, Line Supervisor, met with Plaintiff regarding the PIP.

39. Ms. Davey and Mr. Crossan told Plaintiff that she needed to perform more lab tests during her shifts. Plaintiff tried to clarify the number of tests that Ms. Davy and Mr. Crossan expected. They would not give her a number and told her they would tell her when she completed enough tests. Ms. Davey and Mr. Crossan left Plaintiff confused, and never discussed the number of tests with Plaintiff again.

40. The PIP was retaliatory in nature, and followed by three "employee disciplinary reports" over the next few months. Plaintiff's supervisors refused to discuss the discipline they gave her. Plaintiff continued to earn positive performance reviews throughout this time.

41. Defendant gave Plaintiff the PIP and discipline reports to discourage her from applying for more promotions and to punish her for complaining about the discriminatory promotion of Ms. LaRose.

42. At the time Defendant denied the promotion to Plaintiff, it had no African-American managers, and, on information or belief, had never employed an African-American in a managerial position. Defendant employed 170 individuals, 41 of whom were in management positions. Of those 41 managers, 38 were Caucasian, and none was African-American.

43. Defendant Elantas, by its actions and failure to act, including but not limited to the conduct described above, discriminated against Plaintiff on account of her race and age in violation of the Title VII of the Civil Rights Act of 1964, as amended, and retaliated against Plaintiff when she opposed discrimination, in violation of the Title VII of the Civil Rights Act of 1964, as amended.

44. As a result of Defendant Elantas's actions and failures to act described herein, Plaintiff has lost income and benefits of employment and has incurred and will continue to incur attorney's fees, costs and expenses of suit.

45.  As a result of Defendant Elantas's actions and failures to act described herein, Plaintiff has suffered garden variety emotional pain, humiliation, inconvenience, mental anguish and loss of enjoyment of life.

46.  Defendant Elantas's conduct was outrageous because of its evil motive or reckless indifference to the rights of Plaintiff and as such, warrants an award of punitive damages in such sum as will serve to punish Defendant Elantas and to deter it and others from like conduct.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor against Defendant Elantas for compensatory and punitive damages, prejudgment interest, as well as for appropriate equitable, declaratory and injunctive relief, attorneys' fees and costs and for such other relief as may be just and proper under the circumstances.

Respectfully submitted,

SEDEY HARPER WESTHOFF, P.C.

*/s/ Claire Bruner-Wiltse*

Mary Anne Sedey, #26731MO
Claire Bruner-Wiltse, #69434MO
2711 Clifton Avenue
St. Louis, MO 63139
314-773-3566
314-773-3615 (fax)
msedey@sedeyharper.com
cbruner-wiltse@sedeyharper.com

7