# 1UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| TONI WILLIAMS-GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18-CV-1958 JCH |
| | ) | |
| ELANTAS PDG, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

In this action, Plaintiff Toni Williams-Green ("Plaintiff") alleges that her former employer, Defendant Elantas PDG, Inc. ("Elantas" or "Defendant") discriminated against her on the bases of race and age, and retaliated against her when she opposed the discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., and the Age Discrimination in Employment Act ("ADEA'), 29 U.S.C. §621 *et seq*.  (Doc. 1).  Defendant now moves for summary judgment (Doc. 41) and, for the reasons explained below, its motion will be granted.

## FACTS[1] AND PROCEDURAL BACKGROUND

Plaintiff, a Black woman born in 1954, worked for Elantas from March 5, 2007, through August, 2016.  Elantas, an electrical insulation company located in North St. Louis City, originally hired Plaintiff as a Raw Materials Analyst in its Quality Control department.  After a few years, Plaintiff moved to a higher paying position as Quality Control Analyst in the same department.

---

[1]  The facts are taken from the parties' respective Statements of Material Facts and Exhibits. *See* Docs. 43, 46, 51, 53, 59, and 60.  In its discussion below, the Court will cite further portions of the record, which will be drawn from the same sources, as necessary to address the parties' arguments.

On December 20, 2012, Alvin "Jay" Jones, the Director of Human Resources, sent an email to all Elantas employees regarding an open position in the Customer Service Relations department for a Customer Service Relations Manager ("CSRM") position.  The CSRM oversees the Customer Services Department, including order entry and pricing files, and is responsible for managing and resolving customer issues and complaints.  The job posting for the CSRM position indicated that a "four-year degree is desired but we would consider internal candidates without degrees."  Doc. 43-1.  The posting also stated that candidates must be "proficient in word processing, PowerPoint, spreadsheet, and database computer applications," and that proficiency in "MS Word and Excel" were preferred.  *Id*.  The CSRM posting also indicated a preference for candidates proficient in the use of SAP, which is Elantas's enterprise resource planning software system ("SAP").[2]  The posting additionally indicated that candidates must have "strong organizational and problem solving skills," and "leadership qualities," and must have "demonstrated [the] ability to interact effectively with individuals at all levels in the organization."  *Id*.  Finally, candidates for the position were required to have completed a third party administered online assessment test, which included, among other things, a critical thinking appraisal portion (the "CMA test").[3]

---

[2]   Elantas uses SAP to, among other things, prepare invoice requisitions, return material authorizations ("RMAs"), retrieve customer information, process customer and vendor surveys and questionnaires, determine inventory balances, track order status and projected delivery dates, place orders, supply information regarding location of distributors, and to track and manage customer complaints, concerns, or special requests.

[3]   Beginning in 2008, Elantas required all candidates for employment to complete a CMA assessment.  Because Plaintiff was hired in 2007, she had to take the CMA as part of the selection process for the CSRM position.  Upon taking the CMA test, Plaintiff's critical thinking score was assessed to be in the 8th percentile relative to college graduates, and in the 19th percentile relative to the general population.  The candidate who was eventually hired for the CSRM position, Ms. LaRose, had taken the CMA test when she was hired in 2008, and, upon her application for the CSRM position, her scores were adjusted to reflect the new norms that were applied starting in 2013.  Her original critical thinking score assessed her to be in the 84th percentile relative to the general population, and the 30th percentile relative to college graduates, and her adjusted score

Seven internal Elantas candidates, including Plaintiff, applied for the CSRM position.  Of those seven, two were Black, and three were over the age of 50.  All the candidates save one, who withdrew her application, interviewed for the position with a four-person panel, including Defendant's Vice President and Chief Financial Officer, its Business Development Manager, Emerging Technologies, its Manager of Production Control, and Mr. Jones.  The candidates,[4] including Plaintiff, then interviewed with Dana Roschnafsky ("Ms. Roschnafsky"), who was the previous CSRM, and who had been recently promoted to Director of Sales and Marketing for Elantas.  After hearing the panelists' recommendations and conducting her own interviews, Ms. Roschnafsky made the ultimate decision regarding who was selected for the position.  On or about February 28, 2013, Mr. Jones sent an email to all Elantas employees, informing them that Diana LaRose had been selected to fill the CSRM position.  Ms. LaRose, a White woman born in 1970, had been serving as the executive assistant to Elantas's Chief Executive Officer, Sue Graham.

On February 28, 2013, Mr. Jones announced Ms. LaRose's selection as the CSRM in an email sent to all Elantas employees.  Later that day, Plaintiff replied to Mr. Jones's message with an email stating, in its entirety, "Dear Jay, I will have to say that I am thoroughly disappointed in the whole process."  Doc. 51-29.  Mr. Jones responded to her email within the hour, stating, "Toni, I am sorry to hear that.  What about the process did you think was wrong or would have made it better?"  *Id.*  If Plaintiff emailed a response to Mr. Jones's inquiry, there is no indication of that in the record.

In June 2013, Plaintiff's supervisor, Cynthia Davey, identified productivity concerns in her

---

indicated that she was in the 58th percentile relative to the general population, and the 37th percentile relative to college graduates.

[4]   It is not clear from the record whether all the candidates interviewed by the panel also interviewed with Ms. Roschnafsky.

department, and, upon examining the number of tests run by the six Quality Control Analysts, noted that Plaintiff and one other employee in the department were completing approximately 75% fewer samples that the remaining Quality Control Analysts.  On June 7, 2013, Elantas placed Plaintiff and the other employee on a performance improvement plan ("PIP") to improve productivity.  Cindy Davey, Plaintiff's supervisor, and Allan Crossan, Line Supervisor, met with Plaintiff regarding the PIP, telling her that she needed to perform more lab tests during her shifts.  Plaintiff successfully completed the PIP sometime later[5] in 2013.  Plaintiff also received three employee disciplinary reports during 2013.  She believes Elantas gave her the PIP and disciplinary reports to discourage her from applying for future promotions, and to punish her for complaining about the CSRM hiring process.  Plaintiff continued to work at Elantas until she retired in 2016.

Plaintiff filed a Charge of Discrimination ("Charge") with the EEOC on August 26, 2013. In her Charge, Plaintiff checked the boxes for discrimination on the bases of race and age, as well as the box for retaliation.  Plaintiff alleged that Elantas denied her a promotion because of her race or age.  However, the Charge contains no allegations that she complained to anyone at Elantas about discrimination in the hiring process, and does not mention the June 7, 2013, PIP or her disciplinary write-ups.  The Charge states that the last day she experienced discrimination was May 31, 2013, and does not allege that the discrimination was a "continuing action."

Plaintiff filed this lawsuit on November 20, 2018, alleging that Defendant discriminated against her on the bases of race and age, and retaliated against her when she opposed the discrimination.  *See* Doc. 1.  As noted above, Defendant filed a motion for summary judgment on

---

[5]  The record is not clear regarding precisely when Plaintiff successfully completed the PIP, but it is clear that it was during 2013.

all Plaintiff's claims.  For the following reasons, the Court will grant Defendant's motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). The movant "bears the initial responsibility of informing the district court of the basis for its motion" and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The proponent of summary judgment need not, however, negate the opponent's claims or defenses.  *Id*. at 324-25.  If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id*. at 324.  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(c)(1)(A); *Wood v. SatCom Mktg., LLC*, 705 F.3d 823, 828 (8th Cir. 2013).  "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (internal quotations omitted).  A "genuine" dispute of material fact is more than "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Bingaman v. Kansas City Power & Light*

*Co.*, 1 F.3d 976, 980 (10th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (citations omitted).

## DISCUSSION

### A.  Race and Age Discrimination Claim

In the absence of direct evidence of race or age discrimination, Plaintiff may survive summary judgment on her claims by creating an inference of unlawful discrimination under the familiar *McDonnell Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 855 (8th Cir. 2012) ("Similar to claims of race discrimination, when a plaintiff 'has no direct evidence of age discrimination, his claims are analyzed under the  . . . burden-shifting scheme of *McDonnell Douglas Corp. . . ..*'") (quoting *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir. 2011)).  Because the *McDonnell Douglas* framework applies to both Plaintiff's race and age discrimination claims, the Court considers them together.

Under the burden-shifting analysis, a plaintiff must first establish a prima facie case of intentional discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  If the plaintiff establishes a prima facie case, a presumption of discrimination is established and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).  The defendant need not persuade the court that the articulated reason was the basis of the employer's action; rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action.  *Id.* at 510.

Upon the proffer of such evidence, the presumption of discrimination established by the prima facie case "simply drops out of the picture." *Id*. at 510-11.  The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination. *Young v. Builders Steel Co*., 754 F.3d 573, 578 (8th Cir. 2014).  A rejection of the employer's proffered non-discriminatory reason by itself or combined with elements of the prima facie case may be enough to establish, but does not compel, an inference of intentional discrimination. *St. Mary's Honor Ctr.,* 509 U.S. at 511.

 In order to establish a prima facie case of discrimination on the basis of race, Plaintiff must introduce evidence showing that she (1) was a member of a protected class; (2) was qualified for the CSRM position; (3) she was denied that position; and (4) the employer filled the position with a person not in the same protected class.  *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).  To make a prima facie case of age discrimination, Plaintiff must show that she was (1) in the protected age group[6]; (2) was otherwise qualified; (3) she was not hired for the position; and (4) the employer hired a younger person to fill the position. *See Chambers v. Metro. Prop. & Cas. Ins. Co*., 351 F.3d 848, 856 (8th Cir. 2003).

Defendant moves for summary judgment on Plaintiff's discrimination claims on two independent grounds.  First, Defendant argues that Plaintiff cannot establish even a prima face case[7] because she has not established that she was qualified for the CSRM position, and has offered no evidence permitting an inference of discrimination.  Second, Defendant argues that, even if

---

[6]  The ADEA prohibits an employer from failing to hire an individual who is at least forty years old because of the individual's age. *Lee v. Rheem Mfg. Co.,* 432 F.3d 849, 852 (8th Cir. 2005) (citing 29 U.S.C. §§ 623(a)(1), 631(a)).

[7]  Here, there is no dispute that Plaintiff, a Black woman who was in her fifties when she applied for the CSRM position, is a member of a protected class under Title VII and the ADEA.  Likewise, there is no dispute that she was denied the promotion, and the position was filled by a younger White person.

Plaintiff could establish a prima facie case, Defendant has put forth legitimate, non-discriminatory reasons for its failure to hire her for the CSRM position, and Plaintiff cannot show that these reasons are pretextual.

1. Prima Facie Case

Under the *McDonnell Douglas* framework, a "plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified." *Burdine*, 450 U.S. at 253. Where a plaintiff cannot show that she was eligible for the position sought, she fails to make a prima facie case.

Defendant argues that Plaintiff has not demonstrated that she was qualified for the CSRM position. Defendant points to several areas where it alleges Plaintiff did not meet the minimum requirements for the position as described in the job posting. For example, the position required that a candidate be proficient in word-processing and spreadsheet applications, preferably Excel and Microsoft, and that familiarity with Elantas's SAP software was preferred. Meanwhile, Plaintiff had little to no experience with these software programs. At the time of her interview, she had never created an Excel spreadsheet, had never manipulated data in an Excel spreadsheet, and did not know how to format such a spreadsheet. *See* Doc. 46-1 at 8. She likewise had very little experience with Microsoft Word. She did not have a computer or internet access at her home, and stated that she had used a computer at her prior job "very rarely." Doc. 46-1 at 19. When asked to describe her experience with Microsoft Word, she said that she "could use [Microsoft Word] if we went to the library," and that she had used it to "write up my resumes or like if I wanted to write a letter." *Id*. at 20.

Defendant also argues that the CSRM position required the candidate to have strong problem solving and critical thinking skills, as the position's primary responsibilities included

resolving problems relating to service, quality, and delivery of the company's product to customers. Elantas used the CMA test to evaluate such skills for all candidates, and Defendant asserts that Plaintiff's CMA test results did not demonstrate the necessary strength in that area. As noted *supra*, Plaintiff's CMA test results indicated that her critical thinking score was assessed to be in the 8th percentile relative to college graduates, and in the 19th percentile relative to the general population. Defendant argues that her low score on the CMA assessment further indicates that Plaintiff did not have the minimum skills required for the CSRM position.

Plaintiff argues that she has established that she was qualified for the position. In support of this argument, she points to the testimony of Jay Jones, the Director of Human Resources, who, when asked at his deposition whether Plaintiff was qualified for the CSRM position, answered "Yes." *See* Pl.'s Ex. 1 at 149. However, that is not all that Mr. Jones stated on the subject. He went on to clarify that his affirmative answer was based purely on Plaintiff's resume, and that while "he would consider" Plaintiff for the position based on her resume, Elantas looks at "more than just the resume," and that when he looked at "all of the package put together," including her CMA assessment and her interview performance, he did "not think she was a qualified candidate." Doc. 59-1 at 16.

The Court is mindful that a prima facie case of discrimination "requires only a minimal showing, while a showing of pretext requires more substantial evidence." *Cherry v. Ritenour Sch. Dist.*, 361 F.3d 474, 479 (8th Cir. 2004). Whether Plaintiff has put forth the "minimal showing" required to establish that she was qualified for the position is a close question. *Id*. However, the Court need not ultimately decide whether Plaintiff has made her prima facie case because, even assuming arguendo that she does, she cannot show that Defendant's legitimate reasons for not hiring her for the CSRM position were pretextual. *See Riser v. Target Corp*., 458 F.3d 817, 820-

- 9 -

21 (8th Cir. 2006) (Where employer has proffered legitimate, non-discriminatory reasons for adverse employment action, Court may skip determining whether a plaintiff has established a prima facie case and move directly to question of discrimination).

    2. Pretext

    Defendant offers several reasons for not hiring Plaintiff for the CSRM position, all of which it contends are legitimate and non-discriminatory. Defendant states that Ms. LaRose was hired because she was more qualified for the position and because she was a better fit for the position. Defendant asserts that Ms. Roschnafsky, when evaluating the candidates for the position, prioritized troubleshooting and problem solving capabilities, because the position involved dealing with customer concerns and requests, as well as computer skills, particularly with regard to SAP. With respect to troubleshooting skills, Ms. Roschnafsky relied on the CMA assessment scores, with a specific focus on the critical thinking scores. Ms. Roschnafsky testified that the primary reason she eliminated Plaintiff from consideration for the position was due to her low score on that portion of the CMA test, and because the evaluation indicated that Plaintiff was not recommended for the position. Doc. 46-2 at 116 and 146. She further testified about other reasons she did not choose Plaintiff, including the fact that she did not think she had the leadership qualities needed for the position, she was not impressed with her interview performance, none of the panel interviewers recommended her, she did not have the necessary computer experience, and her background was more technical rather than customer service oriented. *Id.* at 116. 146. 149-50). Defendant need not prove that Ms. LaRose was more qualified than Plaintiff, as an employer has discretion to choose among equally qualified candidates, provided the choice was not motivated by unlawful criteria. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 259 (1981). Furthermore, "[p]rioritizing a certain set of skills over others is a legitimate, nondiscriminatory

reason for a hiring decision." *Farver v. McCarthy*, 931 F.3d 808, 812 (8th Cir. 2019). Accordingly, Defendant has met its burden to offer legitimate, non-discriminatory reasons for not hiring Plaintiff.

Because Defendant offers legitimate reasons for not hiring Plaintiff, Plaintiff bears the burden to show these reasons were pretextual. *Young*, 754 F.3d at 578. "There are two primary ways to show pretext in this area. A plaintiff may present evidence the proffered reason has 'no basis in fact' or 'a [prohibited] reason [is] more likely.'" *Farver v. McCarthy*, 931 F.3d 808, 812 (8th Cir. 2019) (quoting *Torgerson*, 643 F.3d at 1048) (alteration in original). According to Plaintiff, four categories of evidence here establish pretext: (i) her qualifications compared to Ms. LaRose's; (ii) Defendant's false or contrived explanations for selecting Ms. LaRose, rather than Plaintiff, for the position; (iii) the racial make-up of the workforce at Elantas; and (iv) allegedly discriminatory treatment of other employees at Elantas.

### i. Qualifications

Plaintiff argues that her qualifications for the CSMR position were objectively superior to Ms. LaRose's. "To show a prohibited reason is more likely because he or she was more qualified than [the] selected candidate[ ], a rejected candidate must present evidence the other candidate [was] in fact *less* qualified." *Id.* (quoting *Kincaid v. City of Omaha*, 378 f.3d 799, 805 (8th Cir. 2004) (emphasis in original). "Similar qualifications do not raise an inference of discrimination." *Id.* (internal quotation omitted). "If the comparison reveals that the plaintiff was only similarly qualified or not as qualified as the selected candidate, then no inference of discrimination would arise." *Torgerson*, 643 F.3d at 1049. (ellipsis omitted). "Although an employer's selection of a less qualified candidate can support a finding that the employer's nondiscriminatory reason for the hiring was pretextual, it is the employer's role to identify those strengths that constitute the best

qualified applicant." *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 916 (8th Cir. 2007).

"To ascertain if the hired candidate[ ] [was] less qualified, 'a comparative analysis of the [employee's respective] qualification[s] is relevant to determine whether there is reason to disbelieve the employer's proffered reason. . . .'" *Farver v. McCarthy*, 931 F.3d 808, 812 (8th Cir. 2019) (quoting *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 864 (8th Cir. 1997). Employers have discretion to consider many experiences and skill sets when making a hiring decision, and to prioritize certain skill sets over others. *See Bone v. G4S Youth Servs., LLC*, 686 F. 3d 948, 955 (8th Cir. 2012) (noting that it is not the court's role to "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination"). Plaintiff argues that a side-by-side comparison shows that she was objectively more qualified than Ms. LaRose, and accordingly, the fact that Ms. Roschnafsky chose the less qualified candidate shows pretext for race and age discrimination.

The Court will first examine Plaintiff's claim that Ms. Roschnafsky undervalued her seniority at Elantas as compared to Ms. LaRosse. Plaintiff began working full time for Elantas in March, 2007, while Ms. LaRose began working full time for Elantas in December of 2008. Elantas has a policy stating that length of service will be taken into account when hiring from within. Doc. 51-1 at 69. However, it does not require that seniority be given determinative effect when making hiring decisions. Plaintiff's length of service with Elantas is not significantly longer than that of Ms. LaRose, and Ms. Roschnafsky's decision not to give it substantial weight in her hiring decision does not infer discriminatory motive.

As to her education and skills, Plaintiff relies primarily on the fact that her background is allegedly so similar to that of Ms. Roschnafsky that it forces the conclusion that Plaintiff should

have been selected to fill her old position.  Plaintiff points to a company newsletter from 2009, which contained a segment entitled, "Meet the Customer Relations Manager—Q&A with Dana Roschnafsky," which Plaintiff maintains is the "single most important item of evidence in [her] case," and which "reads like a roadmap [that] leads us swiftly and surely to the conclusion that Ms. Williams-Green rather than Ms. LaRose should have been selected as the CSR Manager." Doc. 51 at 6.

In the Q&A, Ms. Roschnafsky was asked to describe the "unique skills" she believed she brought to the customer service team.  She responded:

> I have practically grown up at [Elantas].  On March 4th I celebrated my 19th year with [Elantas].  I believe having my bachelor's degree in chemistry, along with my time in [Quality Control], analytical, and also technical service brings a unique blend of skills.  Being able to understand how the material is made, tested and performs allows me to better understand the needs of the customer . . ..

Doc. 51-25.

Based on this, Plaintiff argues that because she also had a bachelor's degree in either biology or chemistry[8] and also had experience working with the company's product in the Quality Control department, both of which Ms. LaRose lacked, that she is more qualified for the CSRM position.  However, the job description specifically stated that a four-year degree could be waived for internal candidates.  Furthermore, the CSRM job posting did not require such technical or science based skills.  Also, while Plaintiff's science degree and the technical knowledge she acquired in the Quality Control position would surely be helpful, it would not seem to be closely aligned with the non-technical skills required in a customer service role.

Plaintiff fundamentally overstates the importance of the Q&A evidence.  Ms. Roschnafsky

---

[8] It is not clear from the record whether Plaintiff's degree is in biology or chemistry or both.  When asked to clarify which area her degree was in, Plaintiff testified that "it's been so long, I'm not sure.".  *See* Doc. 59-2 at 3.

was not asked what skills were required in order to fill the CSRM position, and, as she testified at her deposition, her answer was not meant to serve as a list of necessary job qualifications for the CSRM position. *See* Doc. 59-3 at 111. The Q&A took place years before the CSRM job was open, and appears to have been a casual piece meant to allow fellow employees to get to know more about one another. Ms. Roschnafsky was also queried about her fear of clowns, her favorite food, and what she knew about Great Danes. As she testified at her deposition, when she was asked what unique skills she believed she brought to the customer service team, Ms. Roschnafsky, by her answer, did not intend to describe all the qualifications required for the job, but rather, was describing what unusual things she personally contributed to the team.

Furthermore, Defendant points to several ways in which Ms. LaRose was more qualified when compared to Plaintiff. First, Ms. LaRose had superior computer skills, with experience using not just Microsoft Word, but also Excel and SAP. Additionally, Plaintiff was not familiar with what the customer service department did, and did not know what Ms. Roschnafsky's job entailed on a day-to-day basis. Meanwhile, Ms. LaRose made a positive impression at her interview when she offered suggestions regarding how she would improve the customer service department. Also, Ms. LaRose scored significantly higher on the critical thinking portion of the CMA test, which Ms. Roschnafsky prioritized when evaluating all the candidates. Finally, as executive assistant to Elantas's CEO, Ms. LaRose developed a good working relationship with individuals in other Elantas departments with which the CSRM position would also have regular interation, including business line managers and sales teams. She also regularly interacted with Elantas customers, as one of her recurring responsibilities was processing and helping with the completion of customer surveys and questionnaires. This all entailed experience that Plaintiff lacked, and that Ms. Roschnafsky felt would contribute to success in the CSRM position.

In summation, Plaintiff fails to demonstrate that she was objectively *more* qualified for the CSRM position than Ms. LaRose.  While it is true that Plaintiff had a four-year degree, as well as technical knowledge concerning Defendant's product, it is also apparent that she lacked the necessary computer skills, and that Ms. Roschnafsky believed Plaintiff's critical thinking score on the CMA test indicated that she lacked the necessary problem solving skills needed for the position. That Ms. Roschnafsky chose to prioritize critical thinking skills over technical knowledge does not indicate discriminatory intent.  The CSRM position is a non-technical, customer service position, and that Ms. Roschnafsky valued problem solving skills over technical knowledge for such a position is not surprising, and does not indicate that illegal discrimination was the actual motivation for her hiring decision.  "Prioritizing a certain set of skills over others is a legitimate, nondiscriminatory reason for a hiring decision." *Farver v. McCarthy*, 931 F.3d 808, 812 (8th Cir. 2019).  Furthermore, even if Plaintiff has shown that she was similarly qualified, and the Court reaches no such conclusion, an employer has discretion to choose among equally qualified candidates. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 259 (1981).

        ii.     False or Contrived Explanations

Plaintiff next asserts that Defendant has proffered multiple false explanations for not selecting her for the CSRM position, and that offering such contrived reasons is probative of intentional discrimination.   First, she contends that her low critical thinking score on the CMA test should not have been considered when comparing her results to Ms. LaRose, because they "were not given the same test."  Doc. 51 at 8.  Plaintiff argues that the test she took was "tailored" to the CSRM position, while the one Ms. LaRose took was "tailored" to her prior position as executive assistant to the CEO.  *Id*.   However, this argument appears to be based on a misunderstanding of the CMA screening assessment, which is an "objective" and "standardized"

evaluation of problem solving abilities and work-related characteristics that does not change depending on the position a candidate is seeking. *See* Doc. 51-11 at 2. Plaintiff also argues that Defendant was misguided in relying on Ms. LaRose's test score, because it was too old. However, while Ms. LaRose did take the CMA test a few years before Plaintiff did, her scores were adjusted for the current norms when she applied for the CSRM position.

Plaintiff next argues that Defendant's normal custom and practice was to consider all categories of the CMA test when making employment decisions, and Defendant deviated from this practice when Ms. Roschnafsky chose to prioritize the critical thinking portion of the exam. However, Defendant disputes this, and the record does not support Plaintiff's assertion. The citations in the record to which Plaintiff directs the Court's attention in support of this argument merely establish that all candidates are expected to have taken the test. *See* Docs. 51-2 at 98; 51-12. There is no indication that Defendant has a custom or practice of giving all portions of the CMA assessment equal weight. Furthermore, simply because Ms. Roschnafsky chose to prioritize the segment of the exam she found most relevant, that does not indicate she did not consider the entire exam. If she believed the critical thinking segment of the test was the most important or relevant to her candidate evaluation process, it was within her discretion to make that determination, and it is not for the Court to question her choice. "[I]t is the employer's role to identify those strengths that constitute the best qualified applicant." *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 916 (8th Cir. 2007).

Finally, Plaintiff argues that computer skills were not actually important to the CSRM position, or alternatively, that she did in fact have the necessary computer experience. This argument is belied by the fact that the job posting makes clear that such skills were required for the position. Additionally, the Court has already discussed the extent of Plaintiff's computer skills,

and will not revisit that discussion except to note that the record establishes that Ms. LaRose clearly had superior computer skills.

### iii.     Racial Composition of Workforce

Plaintiff next puts forth as evidence of pretext the fact that Elantas did not have any Black managers.  Plaintiff devotes a mere three sentences to this argument, stating simply that the absence of Black managers "is the 'inexorable zero' which serves, in and of itself, to generate a 'strong inference of discrimination.'"  Doc. 51 at 5 (quoting *Donaghy v. Omaha*, 933 F.2d 1448, 1460 (8th Cir. 1991).  However, the Eighth Circuit has instructed that while "simplistic demographic evidence" may "support a finding of pretext, particularly where there are independent, direct grounds for disbelieving the employer's explanation for discharge," such "generic . . . employment statistics" are generally not sufficient to demonstrate pretext.  *Bogren v. Minnesota*, 236 F.3d 399, 406 (8th Cir. 2000) (citing *Bullington v. United Air Lines, Inc*., 186 F.3d 1301, 1319 (10th Cir. 1999) ("[B]ecause overall employment statistics have little bearing on the specific intentions of the employer in making particular hiring decisions, such statistical evidence will rarely suffice to rebut an employer's legitimate, nondiscriminatory reasons for a particular adverse employment action."); and *LeBlanc v. Great Am. Ins. Co*., 6F.3d 836, 848 (1st Cir. 1993) ("[S]tatistical evidence in a disparate treatment case, in and of itself, rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale for its decision to dismiss an individual employee.")).  The Court concludes that Plaintiff's demography based argument does not suffice to establish pretext, particularly where, as here, there is no other "independent, direct grounds for disbelieving the employer's explanation" for not hiring her.  *Id*.

### iv.     Treatment of Other Employees

Finally, Plaintiff argues that Defendant's rejection of the other CSRM candidates who were

Black or in their fifties gives rise to an inference of discrimination against Plaintiff herself.  While such "me-too" evidence may serve to illustrate that an employer's asserted reasons for disparate treatment are a pretext for discrimination, whether such evidence is relevant and admissible "depends on many factors, including how closely related the evidence is the plaintiff's circumstances and theory of the case."  *Dindinger v. Allsteel*, 853 F.3d 414, 424-25 (8th Cir. 2017) (internal quotation omitted).   Plaintiff has not provided any information which would allow the Court to determine the significance of her proffered "me-too" evidence in this case.

With respect to age, Plaintiff simply states that two of the other candidates were also in their fifties, while Defendant ultimately selected a "much younger" candidate.  Plaintiff offers no evidence from which the Court can infer that this decision had anything to do with age.  She did not choose to depose either of these other candidates, and there is nothing in record to suggest that they were passed over because of their age.  Furthermore, the Court notes that the selected candidate, though younger, was in her forties, and as such, she was also in the protected age class for purposes of ADEA discrimination.

As to race, Plaintiff states that Defendant also rejected the only other Black candidate for the position besides herself.  Similarly, she offers no evidence that the other candidate was rejected due to her race.  Defendant responds that two members of the interview panel recommended the other Black candidate for the position to Ms. Roschnafsky, belying the argument that Defendant refused to hire a Black person for the position.  Furthermore, Ms.  Roschnafsky testified that she found the other Black candidate to be lacking in leadership qualities.  Plaintiff dismisses that reason as "subjective" and "unreliable," but provides no evidence to refute the same.

The Court concludes that Plaintiff has not presented sufficient evidence from which a reasonable fact finder could disbelieve Defendant's nondiscriminatory explanation for her

termination.  Because her evidence of pretext is insufficient to create a genuine issue of material

fact under Rule 56, Defendant is entitled to summary judgment on her discrimination claim.

### B.  Retaliation Claim

Defendant asserts that Plaintiff's retaliation claim fails as a matter of law because

Plaintiff did not administratively exhaust her claim.  Administrative remedies are exhausted by

the timely filing of a charge and the receipt of a right-to-sue letter.  *See Williams v. Little Rock*

*Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994).  Nevertheless, the completion of that two-

step process constitutes exhaustion only as to those allegations set forth in the EEOC charge and

those claims that are reasonably related to such allegations. *See id.* ("A plaintiff will be deemed

to have exhausted administrative remedies as to allegations contained in a judicial complaint that

are like or reasonably related to the substance of charges timely brought before the EEOC.").

The Courts do not require that subsequently-filed lawsuits mirror the administrative charges

precisely.  However, the sweep of any subsequent judicial complaint may be only as broad as

that "reasonably expected to grow out of the charge of discrimination."  *Duncan v. Delta Consol.*

*Indus., Inc*., 371 F.3d 1020, 1024-25 (8th Cir. 2004), abrogated on other grounds by *Torgerson v.*

*City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc).  Furthermore, the Eighth Circuit has

held that "retaliation claims are not reasonably related to underlying discrimination claims" and

thus, must be independently exhausted.  *Wedow v. City of Kansas City, Missouri*, 442 F.3d 661,

672–73 (8th Cir.2006).

In Plaintiff's written charge that she filed with the EEOC, she checked the boxes for

discrimination on the bases of race and age, as well as the box for retaliation.  Doc. 10-1 at 1.  In

the portion of the form where she was asked to provided "particulars," regarding her claim, she

described interviewing for the CSRM position, and alleged that Elantas denied her the promotion

because of her race, age, and sex, and stated that they gave the job to a "Caucasian under 40."[9] *Id.* Plaintiff also alleged that Ms. LaRose "obtained the position . . . because she was good friends with the decision maker." *Id.* However, the charge contains no allegations that she complained to anyone at Elantas about discrimination in the hiring process, and does not mention the June 7, 2013, PIP or her disciplinary write-ups. The charge states that the last day she experienced discrimination was May 31, 2013, a date that precedes both the PIP and the write-ups, and contains no allegation that the discrimination was a "continuing action." *Id.* Defendant argues that Plaintiff failed to exhaust her retaliation claim in her charge of discrimination when she checked the box for "retaliation," but included no allegations of retaliation in the "particulars" portion of the charge.

Plaintiff argues that the Eighth Circuit has adopted a lenient, rather than a strict, interpretation of the exhaustion requirement, and that "even if Ms. Williams-Green failed to adequately narrate a retaliation claim in her EEOC charge it does not follow that she failed to exhaust it." Doc. 51 at 17. She argues that her retaliation claim should be deemed exhausted because the permissible scope of a lawsuit includes not just the claims alleged in the administrative charge, but also any claims that could reasonably be understood to be an "outgrowth" of claims in the charge. *Id.* However, this argument fails to acknowledge the current state of the law in the Eighth Circuit. While the Eighth Circuit did once take a more expansive approach to the exhaustion requirement as it related to retaliation claims, the Court has in recent years "considerably narrowed [its] view of what is like or reasonably related to the originally filed EEOC allegations." *Wedow v. City of Kansas City, Missouri*, 442 F.3d 661, 672-73 (8th Cir. 2006) (internal quotation omitted). As the Eighth Circuit stated in *Richter v. Advance Auto Parts, Inc*., 686 F.3d 847 (8th Cir. 2012), "[w]hile at one time [this Court] permitted a finding that a subsequent

---

[9]   It appears that Plaintiff believed Ms. LaRose to be younger than she actually was.

retaliation claim growing out of an EEOC age discrimination complaint was sufficiently related to be within the scope of the lawsuit . . . we have subsequently recognized that "retaliation claims are not reasonably related to underlying discrimination claims," and must be separately exhausted. *Richter*, 686 F.3d at 852, (citing *Wedow*, 442 F.3d at 672-73 (internal citation omitted).  The question, then, is whether merely checking a box is sufficient to exhaust a claim of retaliation.

The Court agrees with Defendant that Plaintiff's claim of retaliation was not within the scope of her EEOC charge, even giving the charge a liberal construction.  Merely checking the box, without asserting any supporting facts, is insufficient to state a claim.  *See Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 803 (8th Cir. 2002) (Where the plaintiff checked the box indicating sex discrimination, but included only a "conclusory statement of sex discrimination in the charge, her claim of sex discrimination was not exhausted.);   *Peyton v. AT & T Servs., Inc.*, No. 4:13CV00216 AGF, 2013 WL 2475700, at *3 (E.D. Mo. June 10, 2013) ("Where, as here, the EEOC charge is bereft of any allusion to allegations of [retaliation], merely checking off the box . . . on the EEOC charge is insufficient to exhaust it as a claim."); *see also Moore v. Vital Products, Inc.*, 641 F.3d 253, 257 (7th Cir. 2011) (stating that "merely checking the 'Race' and 'Sex' discrimination boxes in the EEOC charge is not enough to make the EEOC charge like or reasonably related to [the plaintiff's] discriminatory discharge claims"); *McCutchen v. Sunoco, Inc.*, No. 01-2788, 2002 WL 1896586, at *3 (E.D. Pa. Aug. 16, 2002) *aff'd*, 80 Fed. Appx. 287 (3d Cir. 2003) ("[W]here the EEOC charge is bereft of any allusion to allegations of racial discrimination, merely checking off the box of 'race' on the EEOC charge is insufficient to exhaust it as a claim.); *Allen v. St. Cabrini Nursing Home, Inc.,* No. 00 CIV 8558 CM, 2001 WL 286788, at *3–4 (S.D.N.Y. March 9, 2001) (same); *Mohan v. AT & T Co.,* No. 97 C 7067, 1999 WL 495113, at * 10 (N.D. Ill. June 30, 1999) (same).  Accordingly, the Court finds that Plaintiff did not, by the

mere checking of a box, exhaust her administrative remedies with respect to the facts set forth in her complaint regarding her retaliation claim.

Plaintiff argues that even if checking the box was insufficient, her retaliation claim should be deemed administratively exhausted because she informed the Civil Rights Enforcement Agency ("CREA") officer of the alleged retaliation during the exchange of written correspondence regarding her claims. Plaintiff cites *Richter* to support her theory that a retaliation claim is deemed exhausted when it is the subject of agency correspondence. Doc. 51 at 18. However, *Richter* does not stand for that proposition. *Richter* merely notes in passing that the EEOC had once represented to the First Circuit Court of Appeals that retaliation for filing a charge of discrimination would "likely" be uncovered in the course of a reasonable EEOC investigation, but upheld the dismissal of Richter's retaliation claim for failure to exhaust, "because the agency's correspondence in this case made no mention of alleged retaliation." *See Richter*, 686 F.3d at 853 (citing *Clockedile v. N.H. Dep't of Corr.*, 245 F.3d 1, 4 (1st Cir. 2001). It does not follow that the Eighth Circuit affirmatively held that a retaliation claim is deemed exhausted simply because it is mentioned in any agency correspondence. Furthermore, the record does not demonstrate that Plaintiff informed the CREA investigator that she complained to her employer of discrimination in the interview or hiring process. The CREA investigator asked Plaintiff to provide any information that she felt was relevant to retaliation, and she responded by saying that the agency should "look for when I applied for the position of customer relations manager," after which her work life "changed." Nowhere in the documentation does Plaintiff mention that she complained to her employer about discrimination in the hiring process, or that she was subsequently subjected to an adverse employment action after any such complaint. Furthermore, there is no indication in the record that the EEOC initiated any conciliation process on the matter of unlawful retaliation with her

employer.   The Court concludes that Plaintiff did not exhaust her claim of retaliation, and Defendant is entitled to summary judgment on that claim.

<u>**CONCLUSION**</u>

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 41) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Rule 26 Disclosures (Doc. 37) is **DENIED** as moot.


Dated this 16th day of September, 2020.


/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE
JEAN C. HAMILTON